## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>*1617 JFK Blvd, Suite 520*<br>*Philadelphia, PA 19103*<br><div align="right">**Plaintiff,**</div><br><div align="center">**v.**</div><br>**SHAHNAWAZ MATHIAS,**<br>  **a/k/a Shah Mathias,**<br>*3255 Cape Horn Road, Apt. 163*<br>*Red Lion, PA 17356*<br><br>**AMERI METRO, INC.,**<br>*2575 Eastern Boulevard*<br>*York, PA 17402*<br><br>**PENNDEL LAND DEVELOPMENT CO., and**<br>*2575 Eastern Boulevard*<br>*York, PA 17402*<br><br>**HSRF TRUST,**<br>*2575 Eastern Boulevard*<br>*York, PA 17402*<br><div align="right">**Defendants.**</div> | **CIVIL ACTION NO.: 1:25-cv-02313**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission" or "SEC") files this

Complaint against Defendants Shahnawaz Mathias a/k/a "Shah" Mathias ("Mathias"), Ameri

Metro, Inc. ("Ameri Metro"), Penndel Land Development Co. ("Penndel"), and HSRF Trust

("HSRF"), and alleges as follows:

## SUMMARY

1.      From at least July 2020 until at least April 2024 (the "Relevant Time"), Mathias,

and others acting at his direction, offered for sale and sold approximately $2.4 million worth of

Ameri Metro shares through Penndel and HSRF by making false and misleading material

statements (including those misleading by omission) about Ameri Metro's operations,

acquisitions, and valuation in its public reports filed with the Commission.  The offers and sales of these securities were not covered by a registration statement or applicable exemption from registration.

2.    Since its inception, Ameri Metro, under Mathias's control, filed dozens of current reports on Form 8-K and several annual reports on Form 10-K with the Commission describing transactions with other Mathias-owned and controlled companies that purportedly were working on large-scale projects.  Although many of these filings involve seemingly baseless speculation about future activities, at least three of these 8-Ks, and two of the Forms 10-K, included material misrepresentations.

3.    Three separate Forms 8-K filed by Mathias and Ameri Metro contained false and misleading statements that Ameri Metro and/or its subsidiaries had acquired: (1) "an easement consisting of 1,000 acres for development of an inland port" in Pennsylvania valued at $260 million; (2) "easements and other rights that relate to certain real property consisting of 4,443 single-family building lots, two golf courses, 30 acres of commercial mixed-use land, 20 acres for development of public schools, 20 acres for construction of civic buildings, and land for construction of sewer treatment facilities" located in San Bernadino, California, with a purchase price of $541,369,000; and (3) a company that had "historically generated approximately $85.0 million in profits from its $1.0B in annual revenues . . . ."

4.    Mathias also signed two misleading Forms 10-K on behalf of Ameri Metro for fiscal years ending July 31, 2022 and 2023, and filed in April of 2024, which, among other things, contained the false and misleading statement that Ameri Metro "has solidified funding of approximately $950,000,000,000 from large financial institutions."

5.      In reality, neither Ameri Metro nor its subsidiaries had acquired the easements, rights, or the profitable company, nor had they secured $950,000,000,000 in funding.  As the control person of the entities on both sides of these transactions, Mathias knew or was reckless in not knowing that the statements in the above filings were materially false and misleading.

6.      By engaging in the conduct described herein, Defendants violated, and unless enjoined will continue to violate Sections 5(a) and (c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c); 15 U.S.C. § 77q(a)], and Sections 10(b),  13(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b), 15 U.S.C. § 78m(a), and 15 U.S.C. § 78t(a)] and Rules 10b-5, 12b-20, 13a-1, and 13a-11 thereunder [17 C.F.R. § 240.10b-5, and 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11].

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

8.      The Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Defendants transact business in this district and violations of the securities laws alleged in this Complaint occurred within this district, including the filing of false and misleading documents with the Commission.

9.      In addition, this Court has jurisdiction because some or all of the Defendants engaged in conduct within the United States that constituted significant steps in furtherance of the violations of the federal securities laws alleged in this Complaint.

10.     In connection with the conduct alleged in this Complaint, Defendants, directly

or indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, the mails, and/or the facilities of a national securities exchange.

## **DEFENDANTS**

11.     **Mathias**, age 65, is a resident of Red Lion, PA.  He is the founder, CEO, Chairman, and majority shareholder of Ameri Metro.  Mathias is the founder and sole owner of Penndel and HSRF.

12.     **Ameri Metro** is a Delaware corporation with a principal place of business in York, PA.  Ameri Metro purports to develop, and then coordinate and supervise the financing, construction and development of, large-scale construction projects, such as ports, real estate developments, toll roads, and high-speed railway cars and lines, by bringing together the resources, plans, financing, approvals, and technology needed to complete such massive and complex undertakings.  In June of 2013, Ameri Metro filed its initial registration statement with the Commission which created a class of securities pursuant to Exchange Act Section 12(g).  That filing noted that Ameri Metro was the result of a merger between "Ameri Metro 2010" and "Yellowwood Acquisition Corporation" in June of 2012.

13.     **Penndel** is a Delaware corporation that was founded in 2002 as a real estate company with a principal place of business in York, PA.  Penndel is wholly owned by Mathias who also serves as its CEO and sole officer.  Penndel had no employees.

14.     **HSRF** is an unincorporated entity created and controlled by Mathias with a principal place of business in York, PA.

## RELATED ENTITIES

15.    **Ameri Metro 2010** is described in a filing with the Commission as the original, pre-merger version of "Ameri Metro, Inc.", which was incorporated in Delaware on April 13, 2010.  That filing noted, "Ameri Metro 2010 was a development-stage company designed to engage in the development of efficient transportation systems, primarily high-speed rail networks for passenger and freight and the development of a certain toll road in the State of Alabama." According to that filing, Ameri Metro 2010 reported merging with Yellowwood Acquisition Corporation, a public company, on June 12, 2012, and "Yellowwood Acquisition Corporation, the surviving entity, changed its name to Ameri Metro, Inc."  Ameri Metro 2010 was owned and controlled by Mathias.  It was a development stage company with no operating history.

16.    **Yellowwood Acquisition Corporation** ("Yellowwood") was a Delaware corporation formed on September 21, 2011, and was a public reporting company that registered a class of securities with the Commission on November 9, 2011.  The Registration Statement filed with the Commission noted, "Yellowwood had no ongoing business or operations and was established for the purpose of completing mergers and acquisitions with a target company, such as the former Ameri Metro 2010."  After the merger in June of 2012, described *supra*, Yellowwood changed its name to Ameri Metro, Inc. (Ameri Metro).

17.    **HSR Logistics, Inc.** ("HSR Logistics") is a Wyoming corporation that was formed in 2010 with a principal place of business in York, PA.  HSR Logistics is owned and controlled by Mathias.  HSR Logistics had no employees or revenue.  In filings with the Commission and marketing materials describing Ameri Metro's planned projects (e.g., airports, rail systems, highways, housing), it is noted that HSR Logistics is, "Designed to handle all purchasing functions."

18.     **Jewel's Real Estate 1086 Master LLLP** ("Jewel's Real Estate") is a
Pennsylvania limited partnership formed in 1997 with its principal place of business in Red Lion,
PA. Jewel's Real Estate is controlled by Mathias and, according to filings with the Commission,
owned by Mathias and two relatives. Jewel's Real Estate had no employees and did not generate
any revenue.

19.     **Ameri Metro, Infrastructure Cryptocurrency Inc.** ("Ameri Metro
Cryptocurrency") is a Delaware corporation formed in 2021 with its principal place of business
in York, PA. Ameri Metro Cryptocurrency purports to be the developer of two consumptive use
tokens created under the laws of Wyoming. Ameri Metro Cryptocurrency is owned and
controlled by Mathias. It had no employees or revenue.

20.     **Malibu Homes, Inc.** ("Malibu Homes") is a Pennsylvania corporation formed in
2013 with its principal place of business in York, PA. It is owned and controlled by Mathias. It
had no employees or revenue. In filings with the Commission and marketing materials
describing Ameri Metro's planned projects (e.g., airports, rail systems, highways, housing), it is
noted that Malibu Homes is, "Designed to establish residential home building services."

## FACTS

**A.      Background and the Offer and Sale of Unregistered Securities.**

21.     A 10-K annual report filed with the Commission in April of 2024, authorized by
Mathias, noted that as of January 31, 2024, Ameri Metro had approximately 4.6 billion shares of
stock outstanding, ranging from preferred stock to Classes A through D of Common Stock, all
listed with a par value of $0.000001.

22.     Transfer agent records reflect that Mathias and entities he controlled owned the
majority of the outstanding shares of Ameri Metro during the Relevant Time.

23.     Because Ameri Metro had a class of securities registered pursuant to Section 12(g) of the Exchange Act during the Relevant Time, it was required to make periodic public filings with the Commission.  Among other things, Ameri Metro was required to file annual reports on Form 10-K to provide a comprehensive overview of its business and financial condition along with audited financial statements. 17 C.F.R § 240.13a-1.  In addition, for each of the first three quarters of its fiscal year, Ameri Metro was required to file a quarterly report on Form 10-Q that included unaudited financial statements and provided a continuing view of the company's financial posture during the year.  17 C.F.R § 240.13a-13.  And Ameri Metro was also required to file Forms 8-K to report material events on an ongoing basis.  17 C.F.R § 240.13a-11.  These reports are filed with the Commission, posted on the Commission's website, and thereby made available to the investing public.

24.     Ameri Metro made dozens of filings with the Commission claiming to have entered into contracts (almost exclusively with other Mathias-created and controlled entities) to develop a long list of projects, although it never actually developed any such projects.

25.     During the Relevant Time, Ameri Metro also had a public website (http://buystock.ameri-metro.com/Home) ("Ameri Metro's website") which stated that Ameri Metro and a wholly owned subsidiary were:

> … pioneers of "PPP" Private Public Partnership, of infrastructure projects and transportation projects.  The Company is a "conduit" to "facilitate", "general contracting" services for infrastructure projects and transportation projects collectively called infrastructure projects nationally.

26.     Ameri Metro transferred its securities to other Mathias-owned entities, including Penndel and HSRF, purportedly as part of the contracts to develop the projects described on Ameri Metro's website and in filings with the Commission.

27.    At Mathias's direction, Penndel and HSRF, in turn, sold the Ameri Metro securities to investors for approximately $1 to $2 per share.

28.    The proceeds from these sales were commingled in the various bank accounts of Penndel, HSRF, Ameri Metro, and Mathias.  Mathias was the signatory on all of those accounts.

29.    Ameri Metro shares owned by Penndel and HSRF were securities that were publicly offered or sold by general solicitation or general advertising, specifically by posting an advertisement, article, notice or other communication via the Ameri Metro website, which included a "Buy Shares Now" tab, as depicted in this screen capture of an archived version of the top of Ameri Metro's website from August 9, 2020:



30.    Ameri Metro employees also solicited investors through phone calls and personal meetings.

31.    During the Relevant Time, Defendants offered for sale and sold shares of Ameri Metro to over 150 investors.  Those investors entered into sales agreements with, and received Ameri Metro shares from, either Penndel or HSRF.  These sales generated a total of approximately $2.4 million in proceeds.

32.    Ameri Metro failed to register the offer and sale of the Ameri Metro securities by HSRF and Penndel during the Relevant Time.

33.     The offers and sales did not qualify for an exemption from filing a registration statement with the Commission.

34.     While a Form D, "Notice of Exemption Offering of Securities," was filed on May 28, 2020, which cited Rule 506(b) as an exemption from the requirement to register, that filing did not exempt the shares sold during the Relevant Time.

35.     No exemption applies because, at Mathias's direction, Ameri Metro shares were offered or sold during the Relevant Time by general solicitation or general advertising, specifically by posting an advertisement, article, notice or other communication via the internet, that is, offering shares for sale on Ameri Metro's website.

**B.     Defendants Made Misrepresentations in Filings with the Commission.**

36.     During the Relevant Time, at least three Forms 8-K filed with the Commission included an untrue statement of material fact and/or omitted to state a material fact necessary in order to make the statement(s) made, in light of the circumstances under which the statement(s) were made, not misleading, about Ameri Metro and its existing operations.  These documents were later attached as exhibits to certain Forms 10-Q and 10-K filed by Ameri Metro, in an effort to continue raising investor funds.

37.     In April 2024, Mathias signed two additional Forms 10-K on behalf of Ameri Metro which included an untrue statement of material fact and/or omitted to state a material fact necessary to make the statement(s) made, in light of the circumstances under which the statement(s) were made, not misleading, about $950 billion in funding purportedly available to Ameri Metro.

### 1. July 22, 2020 False Filing: the $1 Billion "Port Trajan" Project.

38.    On July 22, 2020, Mathias caused Ameri Metro to file a Form 8-K which falsely claimed that HSR Logistics had "acquired an easement consisting of 1,000 acres for development of an inland port" from Jewel's Real Estate.  The filing further noted, "Based on the value of the land, with 4 million square feet of fully developed warehousing space the estimate overall value of the easement is $260,000,000."

39.    Jewel's Real Estate did not own the easement it was supposedly selling.

40.    Further, neither Jewel's Real Estate, Mathias, nor any entity Mathias owned or controlled, had sufficient assets to acquire the easement from the actual landowner(s).

41.    The Form 8-K attached a document which provided additional detail regarding this purported project, which was referred to as "Port Trajan Development" and had an estimated cost of $1 billion.  Port Trajan was described as "a transportation multimodal hub and logistics center" located in Antrim Township, Greencastle, Pennsylvania.  The document stated that Ameri Metro planned to provide a "distribution center consisting of terminals with rail connections to NS and CSX facilities."

42.    At the time of the 2020 filing, Mathias knew or was reckless in not knowing that there was no ongoing viable Port Trajan project.

43.    Both NS (Norfolk Southern Corp.) and CSX (CSX Transportation) are rail transportation providers with facilities in the geographic area described in the filing.  Neither company has any record of any communication with Defendants or entities referenced in the filings related to Defendants.

44.    Antrim Township officials confirmed that individuals working for and with Antrim Township held meetings with Mathias in 2013 regarding a purported rail and easement

related project that was similar to Port Trajan as described in the Form 8-K filed in July of 2020. However, after a second meeting in the summer of 2013 between officials with Antrim Township and Mathias, it was clear that Antrim Township officials could not enter into the agreement(s) Mathias proposed.  There was no deal as no agreement was reached.  Antrim Township considered the matter closed.

45.    This false and misleading Form 8-K was included as an exhibit to Ameri Metro's subsequent Form 10-K for fiscal year ended July 31, 2021, which was filed with the Commission on October 27, 2021.  It was also included as an exhibit to Ameri Metro's Form 10-Q for the quarter ended October 31, 2020, which was filed with the Commission on December 21, 2020.

### 2.  September 4, 2020 False Filing: $915 Billion Valuation Report.

46.    On September 4, 2020, Mathias and Ameri Metro made materially false and misleading claims regarding the company's success and value in a Form 8-K which it labeled as an Item 7.01 Regulation FD Disclosure and attached a document entitled "Valuation Report Prepared by Ameri Metro, Inc. Management assisted by NorAsia Consulting & Advisory to the Board of Directors" (the "Valuation Report") which was dated August 31, 2020.

47.    The Valuation Report stated that as of August 31, 2020, the "adjusted book value" of Ameri Metro based on its 25% ownership interest in several related companies (Mathias owned the remaining 75% interest in these related companies) was over $915 billion, despite the fact that that those companies never had any operations or assets.

48.    The Valuation Report read, in pertinent part:

The Company has no historical earnings but with [sic] recent acquisition of profitable companies, such as Marfin Investment Group which has historically generated approximately $85.0 million in profits from its $1.0B in annual revenues these acquisitions will provide historical and proven earnings to Ameri Metro.

49.     This statement was false, as neither Ameri Metro nor Mathias acquired or held any ownership interest in Marfin Investment Group.  Marfin Investment Group is the former name of MIG Holdings S.A., based in Athens, the Hellenic Republic, and is a real estate investment and holding company.

50.     MIG Holdings S.A. has confirmed that Ameri Metro and Mathias did not control a percentage equal to or greater than 5%, which would require public disclosure.  Further, MIG Holdings S.A. indicated that, to the best of their knowledge, Ameri Metro and Mathias "do not, in any way, participate in our Company or in any of our Company's subsidiaries, all of which are 100% controlled by our Company."

51.     Mathias knew or was reckless in not knowing that Ameri Metro had not acquired Marfin Investment Group, and that Ameri Metro also had not ever acquired other "profitable companies" that had "historical and proven earnings" sufficient to justify a $915 billion valuation.

52.     The Valuation Report containing this same misrepresentation about Marfin was included as an exhibit to several subsequent periodic filings by Ameri Metro, including its Form 10-K for the fiscal year ended July 31, 2022, as well as its Form 10-K for the fiscal year ended July 31, 2023, which were both signed by Mathias and filed with the Commission on April 23, 2024.

**3.   November 5, 2021 False Filing: $722 Million Real Estate Development.**

53.     On November 5, 2021, Mathias caused Ameri Metro to file a materially false and misleading Form 8-K which described a purported real estate development deal that involved Jewel's Real Estate and Ameri Metro Cryptocurrency, jointly defined as "Seller," and Ameri

Metro, defined as "Buyer," with a purchase price of $541,369,000. The property that was purportedly involved in this deal was located in San Bernadino, CA.

54.    The filing provided the following details regarding this purported transaction:

Seller provided Buyer all rights to develop and acquire easements and other rights that relate to certain real property consisting of 4,443 single-family building lots, two golf courses, 30 acres of commercial mixed-use land, 20 acres for development of public schools, 20 acres for construction of civic buildings, and land for construction of sewer treatment facilities, located in California (the "Property").

55.    In a second transaction, Ameri Metro, the "Buyer," purportedly assigned all of "its right, title and interest, together with all of its obligations and duties" to Malibu Homes for $722,738,000, to be paid in consumptive use tokens called "Ameri Coin" which were developed by Ameri Metro Cryptocurrency.

56.    The Form 8-K attached agreements documenting these purported transactions.

57.    Despite representations to the contrary, neither Ameri Metro, Mathias, or any of the entities controlled by Mathias referenced in the Form 8-K detailing this real estate project owned a single parcel of property in San Bernadino County. Moreover, Ameri Metro had almost no cash or other assets at the time – certainly not assets worth anything close to $541,369,000 to make this acquisition. Nor did the company have any arrangements for financing that would have covered that purchase price.

### 4.    April 2024 False Filings: $950 Billion Financing Arrangement with "Large Financial Institutions"

58.    In April 2024, Mathias signed two false and misleading Forms 10-K on behalf of Ameri Metro for the fiscal years ending July 31, 2022 and 2023, which, among other things, falsely stated that Ameri Metro "has solidified funding of approximately $950,000,000,000 from large financial institutions."

59.     At no time did Ameri Metro receive $950,000,000,000 in funding from any

financial institutions.  There is no record of any deposit greater than $200,000 into the identified

corporate bank accounts of Ameri Metro, Penndel, and HSRF.

**C.     Ameri Metro's Registration is Revoked.**

60.     Ameri Metro filed a Form 10-Q with the Commission in March of 2022 which

covered the quarterly period that ended January 31, 2022.  Thereafter, Ameri Metro failed to

timely file required Form 10-Qs.

61.     On September 12, 2023, the Commission issued an order instituting proceedings

against Ameri Metro to determine whether it was appropriate to suspend or revoke the

registration of Ameri Metro securities based on failure to file timely and accurate information in

its periodic reports pursuant to Section 12(j) of the Exchange Act.

62.     In April of 2024, Ameri Metro filed a number of Forms 10-Q and 10-K with the

Commission.  The filing did not contain required current financial statements or other

disclosures, but did include prior filings as attachments.

63.     On January 17, 2025, the Commission entered an order by consent revoking

Ameri Metro's registration pursuant to Exchange Act Section 12(j), effective as of January 21,

2025.

**UNREGISTERED SALE OF SECURITIES**

64.     Sections 5(a) and 5(c) of the Securities Act require that an issuer register the offer

or sale of securities with the SEC absent an applicable exemption from registration.  Mathias

controlled all aspects of the management of Ameri Metro, Penndel and HSRF, including their

offer and sale of securities.

65.    Defendants offered and sold securities in the form of Ameri Metro stock to investors through Penndel and HSRF without first having filed a registration statement with the Commission for the offering and without any applicable exemption from registration.

66.    While Ameri Metro had filed registration statements in the past, none of those filings registered the offer and sale of securities during the Relevant Time.

67.    From July 2020 to April 2024, Defendants, directly and indirectly, offered for sale and sold securities – shares of Ameri Metro – to over 150 investors, through Penndel and HSRF. These sales generated a total of approximately $2.4 million in proceeds.

68.    Ameri Metro offered securities for sale in interstate commerce, specifically on the internet through Ameri Metro's website.  In addition, the offers of securities used interstate facilities or the mails and interstate commerce, specifically the internet, including Ameri Metro's website, and the Commission's website, to circulate information about the securities.

69.    Defendants engaged one or more stock transfer agent(s) that in turn used means of interstate commerce, including the mails, to send and receive agreements and certificates with investors.

70.    Penndel and HSRF directly offered and sold Ameri Metro stock to the public without registration or an applicable exemption.

71.    Mathias played an integral role in the offer and sale of Ameri Metro shares.  For example, Mathias actively promoted the sale of Ameri Metro shares, actively recruited investors to purchase Ameri Metro shares by making periodic telephone calls to investors, maintained the scheme by participating in periodic conference calls with investors to provide updates, and directly sold Ameri Metro shares to investors.

## DEFENDANTS VIOLATED THE ANTIFRAUD PROVISIONS

72.    Defendants knew, or were reckless in not knowing, that the disclosures in the three Forms 8-K and two Forms 10-K, and later filings that incorporated them, contained false and misleading statements (including those rendered misleading due to omissions) regarding Ameri Metro's operations, acquisitions, and valuation.

73.    Defendants knew, or were reckless in not knowing, that shares of Ameri Metro sold after those public filings with the Commission were based on fraudulent disclosures. Defendants' conduct presented a danger of misleading buyers or sellers that was either known to Defendants or was so obvious that Defendants must have been aware of it.

74.     The misstatements (or misstatements misleading by omission) were made by Mathias and Ameri Metro in Ameri Metro's filings with the Commission, over which Mathias exercised ultimate authority and control.

75.    Mathias controlled Ameri Metro, Penndel and HSRF, and directed the actions of Ameri Metro, Penndel, and HSRF, in the furtherance of the scheme to defraud investors.

76.    The misstatements (or misstatements misleading by omission) were material as there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision.  These material misstatements describe real estate acquisitions purportedly worth hundreds of millions of dollars and the acquisition of a company generating $85 million in annual profits from $1 billion in revenue when, in reality, Ameri Metro had no operations or revenue.  The misstatements were made repeatedly in reports filed with the Commission and were publicly available to investors both on the sec.gov website and links to those filings on Ameri Metro's website when making their decision to buy Ameri Metro shares.

77.     Mathias also engaged in deceptive conduct by creating agreements between his entities, none of which had any operations, purporting to transfer valuable property rights when those entities did not actually own the purported rights.  He attached those agreements to SEC filings to support his claims.

78.     Mathias perpetrated his fraudulent scheme with a years-long course of conduct involving false filings and agreements amongst his entities that gave the investors the false impression that Ameri Metro was a thriving business.

79.     The fraudulent conduct occurred in connection with the purchase and sale of Ameri Metro securities since the sales occurred during the Relevant Time, after the filings with the Commission that contained materially false and misleading statements.

80.     Mathias, and by extension the entities he owned and controlled, acted with scienter.  Mathias knew that his entities did not actually own either the easement or land in the Pennsylvania and California transactions.  And Mathias knew that none of his companies had any actual operations or assets, yet he publicly claimed in a Form 8-K filed with the Commission that he had acquired a business with over $1 billion in revenue and millions in profits.  He also knew or was reckless in not knowing that Ameri Metro had not secured $950 billion in funding from large financial institutions, but signed two Forms 10-K containing that statement.

81.     Defendants received money from the sale of Ameri Metro shares when the proceeds of those sales were commingled amongst their bank accounts, all of which were controlled by Mathias.  Mathias, Penndel and HSRF used the misstatements in Ameri Metro's filings to obtain money from the sale of shares to investors.

82.    Defendants further knew, or were reckless in not knowing, that they were engaged in a scheme to defraud investors and further engaged in practices that operated as a fraud or deceit upon those investors by selling Ameri Metro shares based on fraudulent disclosures.

## FALSE AND MISLEADING STATEMENTS IN PUBLIC FILINGS

83.    Ameri Metro, as an issuer with securities registered under Section 12 of the Exchange Act, is required under Section 13(a) of the Exchange Act and Rules 13a-1, and 13a-11 thereunder to file annual, and current reports with the Commission containing such information as the Commission's rules prescribe.  In addition, Rule 12b-20 requires that reports contain such further material information as may be necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

84.    Ameri Metro violated Section 13(a) and Rule 13a-11 thereunder in connection with its false and misleading statements and half-truths in its Forms 8-K related to: (1) its purported agreements concerning the Port Trajan project in Pennsylvania (filed July 22, 2020); (2) the book value of Ameri Metro and its stock, and its acquisition of Marfin, a purportedly profitable business (filed September 4, 2020, with an attached Valuation Report); and (3) a purported agreement concerning a California real estate development (filed November 5, 2021).

85.    In violation of Section 13(a) and Rules 12b-20 and 13a-1, Ameri Metro falsely claimed to have solidified funding of $950 billion from large financial institutions in its Forms 10-K for the fiscal years ending July 31, 2022 and 2023 (filed April 23, 2024).

86.    Mathias aided and abetted Ameri Metro's violations because he provided substantial assistance to Ameri Metro in committing these violations by providing information about the underlying transactions, and participating in the drafting, review, and approval of each of the relevant filings discussed above.

87.    Since the disclosures in these filings involved transactions with related entities owned and controlled by Mathias, he provided the misleading information concerning the transactions and had direct knowledge of whether the filings were accurately describing the transactions.

88.    Mathias aided and abetted Ameri Metro's violations because he also signed the Forms 10-K for the fiscal years ended July 31, 2022 and 2023, both of which falsely stated that Ameri Metro had secured $950 billion in funding from large financial institutions.

89.    The misleading statements in public filings were made in violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, along with the specific Exchange Act Rules summarized in the following table:

| Summary of Misleading Statements in Public Filings | | | |
|---|---|---|---|
| **Filing Date** | **Filing** | **Misrepresentation** | **Rules Violations** |
| July 22, 2020 | 8-K | PA easement acquisition | 13a-11 |
| Sept 4, 2020 | 8-K | Valuation Report listing Marfin acquisition | 13a-11 |
| Nov 5, 2021 | 8-K | CA development | 13a-11 |
| Apr 23, 2024 | 10-K FY 22 | $950 billion in secured funding | 13a-1; 12b-20 |
| Apr 23, 2024 | 10-K FY 23 | $950 billion in secured funding | 13a-1; 12b-20 |

### FIRST CLAIM FOR RELIEF
**Unregistered Offers and Sales of Securities in Violation of
Sections 5(a) and 5(c) of the Securities Act
(Against All Defendants)**

90.    The Commission repeats and realleges Paragraphs 1 through 89 of its Complaint.

91.    The offer and sale of Ameri Metro's shares was an offer and sale of securities.

92.    Defendants directly or indirectly, singly or in concert,

(a)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect;

(b)     for the purpose of sale or for delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; and/or

(c)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

93.     By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

**SECOND CLAIM FOR RELIEF**
**Fraud in Violation of Section 17(a) of the Securities Act**
**(Against All Defendants)**

94.     The Commission repeats and realleges Paragraphs 1 through 89 of its Complaint.

95.     By engaging in the conduct described above, Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, knowingly, recklessly, or negligently,

(a)     employed one or more devices, schemes or artifices to defraud;

(b)     obtained money or property by means of one or more untrue statements of material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)     engaged in one or more transactions, practices or courses of business which operate or would operate as a fraud or deceit upon a purchaser.

96.     By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**THIRD CLAIM FOR RELIEF**
**Fraud in Violation of Section 10(b) and Rule 10b-5 of the Exchange Act**
**(Against Mathias and Ameri Metro)**

97.     The Commission repeats and realleges Paragraphs 1 through 89 of its Complaint.

98.     Mathias and Ameri Metro directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly,

(a)     employed one or more devices, schemes, or artifices to defraud;

(b)     made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)     engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

99.     By reason of the foregoing, Mathias and Ameri Metro violated, and, unless

enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15

U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## FOURTH CLAIM FOR RELIEF
### Fraud in Violation of Section 10(b) and Rules 10b-5(a) and (c) of the Exchange Act
### (Against Penndel and HSRF)

100.     The Commission repeats and realleges Paragraphs 1 through 89 of its Complaint.

101.     Penndel and HSRF directly or indirectly, singly or in concert, by the use of the

means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national

securities exchange, in connection with the purchase or sale of securities, knowingly or

recklessly,

      (a)      employed one or more devices, schemes, or artifices to defraud; and/or

      (b)      engaged in one or more acts, practices, or courses of business which

            operated or would operate as a fraud or deceit upon other persons,

            including purchasers and sellers of securities.

102.     By reason of the foregoing, Penndel and HSRF violated, and, unless enjoined, are

reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]

and Rules 10b-5(a) and (c) [17 C.F.R. §§ 240.10b-5(a), (c)] thereunder.

## FIFTH CLAIM FOR RELIEF
### Periodic Reporting Violations in Violation of Exchange Act Section 13(a) and
### Rules 12b-20, 13a-1, and 13a-11 Thereunder
### (Against Ameri Metro)

103.     The Commission realleges and incorporates by reference here the allegations in

paragraphs 1 through 89 as if they were fully set forth herein.

104.     By engaging in the conduct alleged above, Ameri Metro, an issuer of securities

registered pursuant to Section 12 of the Exchange Act, filed materially false and misleading

current reports, materially false and misleading quarterly reports, and materially false and misleading annual reports with the Commission that made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, by making material misstatements in Form 8-Ks filed with the Commission on July 22, 2020, September 4, 2020, and November 5, 2021, in violation of Section 13(a) of the Exchange Act and Rule 13a-11, and in Forms 10-K for the fiscal years ending July 31, 2022 and 2023, in violation of Section 13(a) of the Exchange Act and Rules 12b-20, and 13a-1.

105.    By engaging in the conduct alleged above, Ameri Metro violated, and, unless enjoined, will again violate, Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-11 thereunder [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11].

## SIXTH CLAIM FOR RELIEF
### Periodic Reporting Violations-Aiding and Abetting Ameri Metro's Violation of Exchange Act Section 13(a) and Rules 12b-20, 13a-1, and 13a-11 Thereunder (Against Mathias)

106.    The Commission realleges and incorporates by reference here the allegations in paragraphs 1 through 89 as if they were fully set forth herein.

107.    By engaging in the conduct alleged above, Mathias knowingly or recklessly provided substantial assistance to Ameri Metro, an issuer of securities registered pursuant to Section 12 of the Exchange Act, which filed materially false and misleading current reports, materially false and misleading quarterly reports, and materially false and misleading annual reports with the Commission that made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading, by making material misstatements in Form 8-Ks filed with the Commission on July 22, 2020, September 4, 2020, and November 5, 2021, in violation of Section 13(a) of the Exchange Act and Rule 13a-11 thereunder, and in Forms 10-K for the fiscal years ending July 31, 2022 and 2023, in violation of Section 13(a) of the Exchange Act and Rules 12b-20, and 13a-1 thereunder.  Mathias aided and abetted these violations because he participated in the drafting, review, and approval of these filings.

108.    By engaging in the conduct alleged above, Mathias aided and abetted Ameri Metro's violations of, and, unless enjoined, will again aid and abet violations of, Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-11 thereunder [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11].

**SEVENTH CLAIM FOR RELIEF**
**Control Person Liability for Ameri Metro's, Penndel's,**
**and HSRF's Violations of the Exchange Act**
**(Against Mathias)**

109.    The Commission realleges and incorporates by reference here the allegations in paragraphs 1 through 89 as if they were fully set forth herein.

110.    Section 20(a) of the Exchange Act provides that every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

111.    As alleged above, Defendant Ameri Metro violated Sections 10(b) and 13(a) of the Exchange Act and Rules 10b-5 and 12b-20, 13a-1, and 13a-11 thereunder, and Defendants

Penndel and HSRF violated Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder.

112.    At all relevant times, Mathias was a control person of Ameri Metro, Penndel, and HSRF for purposes of Exchange Act Section 20(a) [15 U.S.C. § 78t(a)].

113.    At all relevant times, Mathias was a culpable participant in, and directly or indirectly induced the acts constituting Ameri Metro's, Penndel's, and HSRF's violations of the Exchange Act, and did not act in good faith.

114.    As a control person of Ameri Metro, Penndel, and HSRF, Mathias is jointly and severally liable under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for each of Ameri Metro's, Penndel's, and HSRF's violations of the Exchange Act.

115.    By engaging in the conduct described above, Mathias violated, and unless restrained and enjoined, will continue to violate, Sections 10(b) [15 U.S.C. § 78j(b)] and 13(a) [15 U.S.C. § 78m(a)] and of the Exchange Act and Rules 10b-5 [17 C.F.R. § 240.10b-5] and 12b-20, 13a-1, and 13a-11 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them from violating, directly or indirectly, the federal securities laws alleged in this Complaint;

II.

Permanently restraining and enjoining Mathias from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in any issuance, offer, or sale of any security, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

III.

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Section 21(d) (5) and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and (7)].

IV.

Ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

V.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], permanently prohibiting Mathias from serving as an officer or director of any company that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

VI.

Granting any other and further relief this Court may deem just and proper.

VII.

Further, the Commission respectfully requests that the Court retain jurisdiction over this

action and Defendants in order to implement and carry out the terms of all orders and decrees

that it may enter, or to entertain any suitable application or motion by the Commission for

additional relief within the jurisdiction of this Court.

VIII.

The Commission hereby demands a trial by jury on any and all issues in this action so

triable.


Dated: July 18, 2025                        Respectfully submitted,

                                            */s/ Gregory R. Bockin*
                                            Gregory R. Bockin (DC Bar No. 450885)
                                            Judson T. Mihok
                                            Attorneys for Plaintiff
                                            SECURITIES AND EXCHANGE COMMISSION
                                            Philadelphia Regional Office
                                            1617 JFK Boulevard, Suite 520
                                            Philadelphia, PA 19103
                                            Phone: 215-597-6500
                                            Fax: 215-597-2740
                                            Email: bocking@sec.gov