**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>　　　　　Plaintiff,<br><br>　v.<br><br><br>SHAHNAWAZ MATHIAS, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 25-2313 (EGS) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Securities and Exchange Commission ("Commission" or "SEC") has filed a Complaint against Defendants Shahnawaz Mathias a/k/a "Shah" Mathias ("Mr. Mathias"), Ameri Metro, Inc. ("Ameri Metro"), Penndel Land Development Co. ("Penndel"), and HSRF Trust ("HSRF"). *See* Compl., ECF No. 1.[1] The Commission alleges the following Claims for Relief: (1) Unregistered Offers and Sales of Securities in Violation of Sections 5(a) and 5(c) of the Securities Act against all Defendants; (2) Fraud in Violation of Section 17(a) of the Securities Act against all Defendants; (3) Fraud in Violation of Section 10(b) and Rule 10b-5 of the Exchange Act against Defendants Mr. Mathias and

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF header page number, not the page number of the filed document.

1

Ameri Metro; (4) Fraud in Violation of Section 10(b) and Rules 10b-5(a) and (c) of the Exchange Act against Penndel and HSRF; (5) Periodic Reporting Violations in Violation of Exchange Act Section 13(a) and Rules 12b-20, 13a-1, and 13a-11 thereunder against Ameri Metro; (6) Periodic Reporting Violations-Aiding and Abetting Ameri Metro's Violation of Exchange Act Section 13(a) and Rules 12b-20, 13a-1, and 13a-11 thereunder against Mr. Mathias; and (7) Control Person Liability for Ameri Metro's, Penndel's, and HSRF's Violations of the Exchange Act against Mr. Mathias. *Id.* at 19-25.

Pending before the Court is the Motion to Dismiss filed by Mr. Mathias, proceeding *pro se*.[2] *See* Mot. to Dismiss ECF No. 8. Upon careful consideration of the Motion to Dismiss, the Commission's Opposition, the applicable law, and for the reasons explained below, the Court **DENIES** the Motion to Dismiss.[3]

---

[2] Mr. Mathias may appear *pro se* on his own behalf, but may not appear on behalf of the corporations named in the Complaint. *See Georgiades v. Martin-Trigona*, 729 F.2d 831, 835 (D.C. Cir. 1984)(stating individual who was not a member of the bar of any court may appear *pro se*, but is not qualified to appear as counsel for others).

[3] Mr. Mathias did not file a Reply brief in response to the SEC's opposition brief. *See generally* Dkt. for Civil Action No. 25-2313.

## I.    Background

The following facts are taken from the allegations in the Complaint, which the Court assumes are true for the purposes of deciding this motion and construes in the Commission's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

The Commission alleges that after making several false filings with it, Mr. Mathias sold approximately $2.4 million worth of Ameri Metro shares. Compl., ECF No. 1 ¶ 1. Mr. Mathias "is the founder, CEO, Chairman, and majority shareholder of Ameri Metro" and "is the founder and sole owner of Penndel and HSRF." *Id*. ¶ 11. "Ameri Metro filed its initial registration statement with the" Commission in June 2013" *id*. ¶ 12; and since then Ameri Metro has made numerous filings with the Commission, *id*. ¶ 24. "Between July 22, 2020 and April 2024, at least three separate Forms 8-K filed with the Commission, and subsequently filed 10-Ks and 10-Qs incorporating and/or referencing those filings, made materially false statements." Opp'n, ECF No. 9 at 11 (citing Compl., ECF No. 1 ¶¶ 3, 4, 36-59). "During that time, shares of AmeriMetro were sold to over 150 investors." *Id*. (citing Compl., ECF No. 1 ¶ 31). "These shares were not registered with the Commission in Washington, D.C." *Id*. (citing Compl., ECF No. 1 ¶¶ 32, 65-71). AmeriMetro "never had any operations or assets." Compl., ECF No. 1 ¶ 47.

"Since its inception, Ameri Metro, under Mathias's control, filed dozens of current reports on Form 8-K and several annual reports on Form 10-K with the Commission describing transactions with other Mathias-owned and controlled companies that purportedly were working on large-scale projects. Although many of these filings involve seemingly baseless speculation about future activities, at least three of these 8-Ks, and two of the Forms 10-K, included material misrepresentations." Compl., ECF No. 1 ¶ 2.[4]

First, the Form 8-K filed with the SEC on July 22, 2020 "concerned the development of a large-scale transportation project allegedly valued at $ 1 billion." Opp'n, ECF No 9 at 11 (citing Compl., ECF No. 1 ¶¶ 38-45). "According to the filing, HSR Logistics (a company owned and controlled by Mathias with no employees and no revenue) acquired an easement consisting of 1,000 acres, and 4 million square feet of warehousing space valued at $260 million from Jewel's Real Estate (another company owned and controlled by Defendant with no employees and no revenue)." *Id.* (citing Compl., ECF No. 1 ¶¶ 17, 38, 18. "Jewel's

---

[4] "Form 8-K is a Securities and Exchange Commission (SEC) periodic report that public companies file to disclose a material change. Unlike Form 10-K and Form 10-Q, which are filed annually and quarterly, respectively, a public company files a Form 8-K whenever a material event occurs. This makes the Form 8-K one of the most filed SEC forms." Cornell Law School, Legal Information Institute, Form 8-K, accessed March 2, 2026, https://www.law.cornell.edu/wex/form_8-k

Real Estate did not own the easement it was supposedly selling."
*Id.* (citing Compl., ECF No. 1 ¶ 39). "And the other parties
allegedly involved in the deal (*e.g.,* Norfolk Southern Corp.,
CSX Transportation, and Antrim Township), all confirmed that
there was no deal." *Id.* (citing Compl., ECF No. 1 ¶¶ 41-44).

Second, the Form 8-K filed on September 4, 2020 "included a
$915 billion valuation report, despite the fact that neither
Ameri Metro or related entities owned and controlled by Mathias
ever had any operations or assets." *Id.* (citing Compl., ECF No.
1 ¶¶ 46-47). "The Valuation Report opened by conceding as much
("The Company has no historical earnings…") but based its
valuation, in part, on the acquisition of Marfin Group, also
known as MIG Holdings, S.A." *Id.* at 11-12 (citing Compl., ECF
No. 1 ¶ 48). "But as MIG Holdings, S.A., confirmed, Ameri Metro
did not acquire their company." *Id.* at 12 (citing Compl., ECF
No. 1 ¶¶ 49-50).

Third, the Form 8-K filed on November 5, 2021 "involved a
non-existent largescale commercial real estate project valued at
$722 million." *Id.* at 12 (citing Compl., ECF No. 1 ¶ 53). "In a
convoluted series of transactions, Jewel's Real Estate and Ameri
Metro Cryptocurrency (another Defendant owned and controlled
entity with no assets and no employees) sold an easement related
to an extremely large real estate development in San Bernadino,
CA, to Ameri Metro for $541,369,000." *Id.* (citing Compl., ECF

No. 1 ¶¶ 19, 53, 54). "Jewel's Real Estate and Ameri Metro Cryptocurrency did not own a single parcel of property they were purportedly selling." *Id.* (citing Compl., ECF No. 1 ¶ 57). "[A] second transaction that immediately followed somehow added $181,369,000 to the value of those same non-existent assets as the valuation was now $722,738,000." *Id.* (citing Compl., ECF No. 1 ¶¶ 54-57. "[T]he second transaction was to another entity created and controlled by Defendant that had no employees or revenue." *Id.* (citing Compl., ECF No. 1 ¶ 20).

All of the public reports filed with the Commission by Mr. Mathias were filed in Washington D.C. *See* 17 C.F.R. § 240.0-3(a) ("[a]ll papers required to be filed with the Commission pursuant to the [Exchange] Act or the rules and regulations thereunder shall be filed at the principal office in Washington, DC.") *see also* 17 C.F.R. § 232.11-12 (electronic filings submitted through the SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system "are transmitted or delivered to the Commission . . . at its 'principal office' in Washington, D.C.)

## II.  Legal Standards

### A. Rule 12(b)(1)

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992). "The court must address the issue of jurisdiction as a threshold matter, because absent jurisdiction the court lacks the authority to decide the case on any other grounds." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 91 (D.D.C. 2000). Moreover, because subject-matter jurisdiction relates to the Court's power to hear the claim, the Court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion. *Uberoi v. EEOC*, 180 F. Supp. 2d 42, 44 (D.D.C. 2001).

### B. Rule 12(b)(2)

Under Rule 12(b)(2), a defendant can move to dismiss a lawsuit if the court lacks personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). A plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over a defendant. *Kurtz v. United States*, 779 F. Supp. 2d 50, 51 (D.D.C. 2011). "A plaintiff must plead specific facts providing a basis for personal jurisdiction[,]" *id.*; and a plaintiff cannot rely on merely conclusory allegations, *Buesgens v. Brown*, 567 F. Supp. 2d 26, 31 (D.D.C. 2008). Accordingly, to establish personal jurisdiction over a defendant, the "plaintiff must allege specific acts connecting [the] defendant with the forum[.]" *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)).

### C. Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) authorizes a party to move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). The plaintiff bears the burden of establishing that venue is proper. *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (citations omitted).

In considering a motion to dismiss for improper venue, the court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (citations and internal quotation marks omitted), *aff'd sub nom. McCain v. Bank of Am. N.A.*, 602 F. App'x 836 (D.C. Cir. 2015). "The Court, however, need not accept the plaintiff's legal conclusions as true, and may consider material outside the pleadings, including undisputed facts evidenced in the record, to determine whether it has jurisdiction in the case." *Ananiev*, 968 F. Supp. 2d at 129 (citations and internal quotation marks omitted).

### III. Analysis

####   A.   The Court has Subject Matter Jurisdiction Over This Matter

Mr. Mathias argues that the Court lacks subject matter jurisdiction over the claims because none of the conduct described in the Complaint occurred in the District of Columbia; rather the conduct occurred "in Pennsylvania or via internet/telephone communications, with all defendants and related entities based on Pennsylvania or Delaware." Mot. To Dismiss, ECF No. 8 at 1.

"[W]hen a resident of the United States is allegedly defrauded in the United States in connection with the sale of securities, the courts of the United States have jurisdiction under the 1934 [Securities Exchange] Act" and the Securities Act of 1933. *S.E.C. v. Banner Fund Intern.*, 211 F.3d 602, 609 (D.C. Cir. 2000). Here, the Complaint alleges seven claims based on violations of the Securities Act and the Exchange Act carried out in the United States and resulting in the loss of millions of dollars by United States investors. *See* Compl., ECF No. 1 ¶¶ 90-115. These allegations are sufficient to establish the Court's subject matter jurisdiction.

Two of the cases cited by Mr. Mathias in support of his argument—*SEC v. Johnson*, No. 03-Civ-177 (JFK), 2006 WL 2053379 (S.D.N.Y. July 24, 2006) and *Leroy v. Great Western United*

*Corp.*, 443 U.S. 173, 185 (1979) do not address subject matter jurisdiction. And the third—*Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247 (2010), addressed the extraterritorial application of claims pursuant to Section 10(b) of the Exchange Act, which is not at issue here. To the extent Mr. Mathias meant to cite *SEC v. Johnson*, 650 F.3d 710 (D.C. Cir. 2011) rather than the case by the same name in the Southern District of New York, that case involved venue, not subject matter jurisdiction. Accordingly, Mr. Mathias' arguments are without merit.

## B. The Court Has Personal Jurisdiction Over Mr. Mathias

Mr. Mathias argues that the Court lacks personal jurisdiction over him because "the [C]omplaint contains no factual allegations that Mathias or any entity transacted business in D.C., had offices, employees, or operations in D.C., or directed any conduct toward D.C. residents," Mot. to Dismiss, ECF No. 8 at 2; rather, "[t]he only 'contact' with D.C. is the ministerial act of filing SEC forms," *id.*

The Complaint alleges that Mr. Mathias violated the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and (c), 15 U.S.C. § 77q(a) and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 15 U.S.C. § 78m(a), and 15 U.S.C. § 78t(a). Compl., ECF No. 1 ¶ 6. These "statutes provide for very broad service of

process." *U.S. S.E.C. v. e-Smart Technologies*, Inc. 926 F. Supp. 2d 231, 236 (D.D.C. 2013) (citing § 78aa ("process ... may be served in any other district of which the defendant is an inhabitant or *wherever the defendant may be found*")(emphasis added); § 77v(a) (same)). "[W]hen Congress intends to permit nationwide personal jurisdiction it uses language permitting service 'wherever the defendant may be found' or 'anywhere in the United States.'" *Dynegy Midstream Services v. Trammochem,* 451 F.3d 89, 95–96 (2d Cir. 2006) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105–106 (1987). "Numerous circuits have 'uniformly held that [w]hen the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with *the United States.*'" *e-Smart Technologies*, Inc. 926 F. Supp. 2d at 236 (quoting *SEC v. Carrillo,* 115 F.3d 1540, 1543 (11th Cir. 1997) (quoting *In re Application to Enforce Admin. of Subpoenas of SEC v. Knowles,* 87 F.3d 413, 417 (10th Cir. 1996)) (emphasis added) (additional internal quotation marks omitted)). Mr. Mathias acknowledges he is a Pennsylvania resident, *see* Mot. to Dismiss, ECF No. 8 at 2; accordingly, he cannot deny contacts with the United States.

Again, two of the cases cited by Mr. Mathias in support of his argument—*Johnson*, 2006 WL 2053379, and *Leroy*, 443 U.S. 173,

do not address personal jurisdiction. To the extent Mr. Mathias meant to cite *Johnson*, 650 F.3d 710, rather than the case by the same name in the Southern District of New York, that case involved venue, not personal jurisdiction. The other case Mr. Mathias cites for the proposition that "[e]ven under nationwide service of process, the assertion of personal jurisdiction must be reasonable and fair under the Fifth Amendment" supports the Court's assertion of personal jurisdiction over him. *See Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) ("we do not think it unfair or inconsistent with 'traditional notions of fair play and substantial justice' to subject [Defendant] to personal jurisdiction in a United States court when it has taken affirmative steps to market its [product] to the American investing public, and when it is alleged to have made material misrepresentations about its business practices that have artificially inflated the market price of [the product]"). Accordingly, Mr. Mathias' arguments are without merit.

### C.  Venue Is Proper In the District Court for the District of Columbia

Finally, Mr. Mathias argues that venue in the District of Columbia is improper because even though the filings with the Commission were made in the District of Columbia, it is insufficient for venue purposes and because "[t]he SEC does not

allege that [Mr.] Mathias 'is found,' 'is an inhabitant' or 'transacts business' in D.C." Mot. to Dismiss, ECF No. 8 at 3.[5]

However, the mandatory authority in this Circuit is that the act of filing Commission documents has a locus in the District of Columbia, and therefore  "venue for civil enforcement actions of the Commission, involving reports required to be filed in the District of Columbia, is here." *SEC v. Savoy Indus., Inc.,* 587 F.2d 1149, 1154 n.12 (D.C. Cir. 1978). Accordingly, Mr. Mathias' argument is without merit.

### IV.  Conclusion and Order

For the reasons explained above, it is hereby

**ORDERED** that Mr. Mathias' Motion to Dismiss, ECF No. 8, is **DENIED;** and it is further

**ORDERED** that the parties shall comply with paragraph 8 of Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan, ECF No. 4.

**SO ORDERED.**

**Signed:       Emmet G. Sullivan**
              **United States District Judge**
              **March 3, 2026**

---

[5] The language Mr. Mathias quotes in paragraph 10 of his Motion to Dismiss—"[T]he mere act of filing documents with the SEC in the District of Columbia does not constitute an act or transaction constituting the violation for venue purposes"—does not appear in *Johnson*, 2006 WL 2053379, nor in *Johnson*, 650 F.3d 710.